Is your opposing counsel in the hall not realizing that we would be progressing so quickly? Perhaps the bailiff could alert counsel that we've moved to the third case for the day and we'll wait for them to arrive. While we have a moment, we note that we have a number of members of the Bar of the Fitzgerald Circuit here today observing for educational purposes, it's always good to have lawyers interested in what goes on in our courts, as well as having the general public interested in what goes on in our courts. While we have a  So, it's particularized to your clients and you have . . . they have standing because the idea was in the marketplace and it's being removed. Correct. Let me ask you this. So, Summum, you're familiar with the Summum case? Yes. Now, as I recall, that's not a standing case, right? That's a case about whether the . . . whether we're talking about government speech or private speech with respect to monuments? Yes. You recall . . . and this is . . . I don't know the answer to this. Did standing ever come up in that case? Can you explain to me, maybe down the line somewhere, why there was standing in that case? Was it that the plaintiffs had donated the monuments or . . . The addition of a new work in the public . . . so, in that case, they were removing an item that had been . . . they wanted to try to force a new work into the public. Oh, is that what it was? Right. Yes. I just didn't remember the facts. What, the atheist wanted a monument in there? Right. My note here says, the most important issue is that the addition of a new work into the public is a far different matter than the removal of an item that has been present for a century. What did the . . . it was the atheist who wanted a monument in that case? Say again? Who wanted a monument in that case? I'm assuming it was Summum, but I don't know. I wonder what monument they wanted. I don't know. But I did say, my other note on that was they didn't talk about the exceptions to government speech doctrine for artistic and political speech, so it doesn't avail in considering the institution. Well, that's fine. I was just curious about it. I can go figure that out myself. Counsel, so what are your state law claims? And you're arguing that you still have those, right? They're just . . . I'm aware that if we don't have a federal claim, then the state claim, then the supplemental jurisdiction can simply . . . the district court is not required to adjudicate those matters. Refresh my memory. What's the gist of those claims, the state law claims? You've stolen . . . well, okay, in the two cases, of course. So in the UT case, you've not followed the bequest, as you were told. We still need to know what this thing is that we have. Are these charitable gifts? Are they trusts? What are these? That claim goes directly to the bequest. It sure does, right. So that's the major claim there. Then there's the Monument Protection Act, which we did not well brief, but it's mentioned there. And then there's the Antipodes Act of Texas, which is in the second amended petition that was not allowed, but it's before the court. And so those laws . . . These are state law claims that you could have your day in state court on these particular state law causes of action. I think those were already attempted, and they didn't go anywhere. The problem with those claims is that the Texas Supreme Court has never really spoken about this, that . . . I'll use just a few seconds. The state law says clearly, if it's a historical monument, it's protected in this way. But none of the courts want to get into that, and so they all say . . . They all bounce it to the Texas Historical Commission and say, if they haven't called it a historical monument, then it's not a historical monument, even if it's clearly an historical monument. So that's a matter left better to the state. And you haven't asked to remand, to replead anything, right? We did not . . . We asked for . . . We appealed the denial of the motion to reconsider, which would have allowed us to file an amended  That was after the motion to dismiss. We just want it remanded back to the courts so they can recognize standing. That's why we're here. It's all about standing. Is there anything else you want to say, sir? You got American Legion. I'm very pleased that the courts are going in the direction of . . . We just want things to slow down. Nobody's saying that you can't make changes to these monuments. Or throw up an MLK statue alongside it. That's not what we're here about. We're here about . . . You've got statues that have been here for a century. What would Europe be like if every time a new organization took over, they laid waste every statue? Those may be very powerful points in some other forum. I hear you. But we appreciate your time, Your Honor. Thank you very much. May it please the court? Debbie Klein on behalf of the City of San Antonio defendants. There's a long line of names, so I will just refer to them as the City of San Antonio Appellees if that's okay with the court. My first point I wanted to make was one that actually you raised at the start. What are we actually here on? There's really only one question. And that is whether, in our case, Judge Ezra and the court below properly found that the appellants lack standing for their federal question. The state law questions have all been dismissed with their right to file in state court, which has not occurred in the City of San Antonio case. So the only question is, what is their federal cause of action and what is their standing? This panel has asked the attorneys in this case to look at the decision in the Apache The Doctrine of Prudential Standing. The Doctrine of Prudential. Thank you. I think it has relevance to this case, although I don't know that it makes a difference because I think Judge Ezra's analysis of the Article III standing was correct. Under the concept of the prudential standing, as I read the cases, two major questions that the court asks is, does the grievance fall within the zone of protected interest and is there a, does the grievance have a particularized, not particularized, is it a general grievance of the public at large or specific to this particular grievance? And also whose rights are being asserted here. And whose rights are being asserted. Is it the plaintiff or is it someone else's rights? In this particular case, we would argue that actually the only rights at issue are the City of San Antonio's rights because of the case in the decision in Summum. Does that go to the merits, though? It does, but I think it touches on this as well because the question is, is there, do they have a claim within the zone of interest of free speech? And the decision in Summum clearly says that statues in public parks are government speech. That is the merits, but it's what is their, what is their zone of interest? So on the standing question, whether it's prudential or Article III, at this stage we have to look at the allegations in the complaint, right? That's in the evidence that was produced in summary judgment. Okay. All right. Well, with respect to that evidence, I mean, the plaintiff in this case characterizes the injury as his own speech, right? Correct. His own speech interests. That is how he characterized it, but he produced no evidence that his speech had in fact been hindered. There was no evidence that the plaintiff or the plaintiff organization had been unable to exercise their right of free speech anywhere within the city of San Antonio, much less within Travis Park, a park which is located in the heart of San Antonio. Their sole contention is that the statue in Travis Park somehow is their free speech. There's no authority to support the fact that you have a free speech interest in a statue in a public park. Moreover, the statue- No one would have the right. That's correct. So he may be the closest person, if he can trace his lineage, in that sort of thing, I guess for the other statue. It's a little bit different in the UT case. For the other statue, I'm trying to- I assume that they would say that no one has that right either. Back in the city of San Antonio case, the statue at issue actually was donated by the Daughters of the Confederacy, which is a separate lawsuit that we have currently ongoing in Judge Ezra's court in San Antonio. They're the ones that raised the funds. If there was a cause of action, they arguably have that cause of action. The Daughters allege they raised the funds for the statue that's being removed in the San Antonio case. That's correct. It's a statue of what? It's a general- It was on a plinth, a granite plinth, with a soldier on the top with a rifle and a finger pointing heavenward. I believe it had a plaque on it saying that it was in remembrance of the Confederate dead, something to that effect. Has San Antonio removed all of its Confederate monuments? I believe that was the only one we had. There is a Confederate cemetery on the east side of town, but that is separate. We have not done anything with that. Is there a place- Is it in the record? What did they do with this? It's currently in storage. Pursuant to Judge Ezra's order at the temporary injunction stage, he ordered that we could remove it, but that we must maintain it through the course of this litigation. Do you believe you can destroy it? Because it's your property, or is that in the other litigation? That's in the other litigation, but it's not really an issue at all, because the ordinance that was enacted to remove the statue specifically says that the statue is to be placed someplace or donated where it will be in the proper context of history and education and consideration. So there was no intent to destroy the statue. You were saying the daughters had raised the funds and donated this statue? Correct. In storage. The plaintiffs in this case, what are their allegations that the removal of this statue interferes with their free speech rights? That is their- I mean, that's basically all the more we have as far as our allegation, is that removing the statue interferes with their free speech. What is their allegation about their connection, their particular connection to the statue? So their connection is that subsequent to the statue going up, the United States Congress gave to the city of San Antonio two cannon, which in the document stated it was for the benefit of the Confederate camp in San Antonio. Those cannon were then placed at the base of the statue. This is where they come with the charitable trust argument, which again on the merits I don't think is properly before the court, but I also don't think it gives them standing because it did not require the city to do anything in particular other than to hold them in trust. Where they're held in trust is not dictated by the language related to the Congress. So whether it's in Travis Park or in a museum or in a storage facility, those cannon are held in trust. Well, if you were writing an opinion for this court on standing, what do you think the best ground for standing is? I mean, I assume you agree with Judge Ezra's order, no standing. I do agree with Judge Ezra. So whether it's prudential, Article III, where do you think this fits? What box does this fit in? I think it falls under the Article III standing analysis. And why is that? What is it? Where does it fail? I don't think that the plaintiffs have or the appellants in this case have properly stated a particularized injury to them from the removal of the statue. I also don't think that they're different. You think they're different from Littlefield? Littlefield, you know, he's descended from Littlefield. Correct. That is not the case in the city's lawsuit. I also think there's a redressability issue, and that interacts with the taxpayer standing that they're asserting. So Mr. Brewer in the city case has claimed that he's a taxpayer, and therefore he has standing. And their contention is that a municipal taxpayer has a lower standard to get into the courts than a federal or state taxpayer. And that's correct. But we still contend, and I believe Judge Ezra properly defined in his decision, that there still are standards that have to be met. First and foremost, there has to be an action to enjoin the expenditure of — But that's in Texas law. That's not in federal law. That's the problem with that analysis, that the requirement to do it before it happens, that's not necessarily the case in federal law. And so that's why I asked really early on about taxpayer standing. You have an alternative argument on taxpayer standing? I have an additional argument on the taxpayer standing, is it goes to redressability, which is an element of Article III standing. So the funds in this case have already been expended to remove the statute. Those cannot be recouped, nor have they asked for them to be recouped in this case. The concept of taxpayer standing is that I am a taxpayer and I don't want my monies used improperly. Well, the monies have already been used. There's nothing to enjoin expending monies for. There is no redress for the plaintiff in this case for the monies that have already been expended. Brewer alleges that removal of the monument caused the city to spend money? I don't think he's even actually pled that, but I think that's the only way that he could. Well, that would be important, right? I'm sorry? If he hadn't pled that, I mean, he has to plead it, right, to get municipal taxpayers standing. Right. So I don't think he even has the pleadings necessary. He's conceded that they didn't properly plead the tax. So we're not – I mean, theoretically, maybe somebody could plead it on any given day, but he's conceded that he did not plead it, and he's not asking to remand to replead. Then it gets back to what is his redressability under the – what is his fee? Well, or maybe it just stops there. That's our position. And so on that, I see I'm running out of time. The city of San Antonio would ask that the decision of Judge Ezra be affirmed. Thank you. May it please the Court, Heather Hacker for the University of Texas. The essence of this case is the plaintiff's disagreement with the university's choice of where to display its artwork, specifically statues of notable figures of the Confederacy. They are entitled to that view, but they are not entitled to make a federal case of it because they lack standing under Article III. The only claim against UT before this Court is plaintiff's First Amendment claim. The plaintiffs admitted that the Court declined to exercise supplemental jurisdiction over the three state law claims, which are similar to claims that were already rejected by the Texas state courts, the Texarkana Court of Appeals. So the only claim that this Court should be looking at with respect to UT is the First Amendment claim. Also, Ms. Hacker, let's look at the UT monument. Littlefield says, I'm a descendant of the donor. Does that mean he has a particularized injury that distinguishes him from the general population, or that he's alleged such an injury? That injury, well, assuming that that is true, that is something that makes him. We have to assume it's true. Yes. Assuming that that is true, it would make him different from the general public. However, it doesn't matter for First Amendment purposes because there's no case law to suggest that someone can assert the free speech rights of a deceased relative. I'm not making light of that, but that's one thing I was trying to get at, whose rights are being asserted here. Is it the deceased? Is it the donor? Is it him? What's your view on that? I mean, he's trying to assert a claim for his own rights, but there is really nothing there to suggest that the statues are in any way his speech. He did not give the money for it. He was not involved in the creation of the statues. Mainly, it boils down to he disagrees with the university's choice to not display the statues anymore, and that does not invade his right to speak. He's free to go to a public forum on or near the campus and express his views in support of the Confederacy or the historic nature of the statues, but he is not free. Those rights do not give him the right to tell the university what to do with its own property. Where this was, was it a limited public forum? I believe that there is a state law that designates at least part of the University of Texas campus as a public forum. So he could stand in the very place of the statue and say, my relative gave for the Confederacy, and this used to be here, and this is wrong. Is that true or not? I believe that the statues were displayed on the main mall, and I'm not 100% sure whether that would be included within the state law, but if it is, as a traditional public forum, he certainly would be entitled to stand there and express his views. But again, that right does not have anything to do with forcing the university to display the statues, which is the university's speech and its own choice. Has the university chosen to eliminate all public display of Confederate symbols? Well, part of the gift that was given was the fountain. There was originally supposed to be an arch that was foregone because it was too expensive, and so there is a fountain there. That is still there, and I'm not aware of any plans to remove it. Is that a Confederate symbol? It was part of Littlefield's gift. I'm not asking about Littlefield's gift. I'm asking, has the university made a choice to excise any Confederate symbol from the university property? I don't believe it's made that choice because the Jefferson Davis statue, specifically, is still displayed on university property. It's being displayed as part of an exhibit centered around that statue in the Briscoe Center. The other statues, the James Hogg statue, which is not necessarily a Confederate statue, but it was part of the statues that were moved, and that's now been relocated next to the main building on campus. The Woodrow Wilson statue, which, again, is not a Confederate statue. My understanding is there are plans to redisplay that at some point, but I don't believe it has been redisplayed. The other statues are part of the collection for the Briscoe Center, and I'm not sure that they are being planned to be displayed, but they have not been excised from the university's property. If we're talking about Article III, and I'll ask you about Prudential standing in a second, we've got concrete particularized injury, we've got causation, we've got redressability. In your view, what's the best box, if we were writing an opinion that affirmed, hypothetically, what's the best box to put this in? I think undoubtedly Article III, Your Honor. This court recently decided a case, Pelletier v. Victoria Air Conditioning, and in that case the court recognized that when a case is brought up under 12b-1, which this case is, the case against UT, that the court has to look at the constitutional standing question first. So there really is no need to get into Prudential standing unless this court— When I say what box, I mean where is the clearest failure of the allegations with respect to the three standing prompts? Injury in fact, Your Honor. These are not the free speech rights of the plaintiffs. It's as simple as that. This is not his expression. It doesn't get us too far into the merits? I don't believe so, Your Honor, because Lujan says that there has to be a legally protected interest that is invaded, and there cannot be a legally protected interest here if it is not his free speech rights that could be in any way conceivably violated. What their claim really boils down to, you were mentioning earlier about the particularized nature of him being a descendant, but I wanted to point the court to the fact that he essentially relies on his status as a potential residuary beneficiary of the will. But in the will itself, which is attached to the complaint, and it's at page 125 of the record in the second codicil to the will, paragraph 19, it appears to name the university as the residuary legatee. So even if the court were to deem that status as somehow befitting a particularized injury, it appears that according to documents attached to the pleading that that would be. We can consider those in the context of a 12B1? Yes, Your Honor, yes. It's attached to the complaint, but also you can consider it. As bearing on whether the injury here is cognizable. Yes, yes. Would it matter if Mr. Littlefield's ancestor were still alive and was the one bringing the suit for your theory of the case? I certainly think it would be more arguable that someone's free speech rights would have been violated. Perhaps a claim could be articulated there that by donating money he had engaged in some act of speech. But if you just told us that residual rights go to the university, within what? Does it matter if he's alive and making the claim himself? I mean, I guess it would also depend on whether he is making a claim, a cognizable claim, as to enforcement of the will. I think that would be a different thing. I mean, this is kind of the issue of sort of combining these two issues, the First Amendment issue and this issue of enforcing the will. But going back to the main issue, which is the First Amendment claim here, again, the plaintiff's free speech rights were not violated here. They did not plead anything to suggest that their free speech rights were violated by the university. Therefore, there's no standing and the court can easily dispose of this case under Article 3. So no one would ever have standing in this circumstance? On a First Amendment claim of this nature, I would say no, Your Honor. Unless there are any further questions, I'll yield the balance of my time. The court should affirm the judgment below. Thank you. You may proceed. You've saved time for rebuttal. In the famous words of all of us, briefly, This picture of the monument is what I gave you this morning. The statue on top is the common soldier. It's not any particular hero. Which one are we looking at here? This is two or three pages toward the back of your packet. I gave you a lot. This is San Antonio. And so it's not about a particular Confederate soldier. It's about soldiers. And so the two cannon is what separates this from, separates and gives us organizational standing, which we have pled. The Sons of Confederate Veterans are the successor in interest to the Confederate Veterans, the camp that was given the cannon by Congress. These cannons were actually used in the Battle of Loretta Pass, and they were given to the Confederate camp. And then the Confederate camp gave it to the city for use in this monument. And then 90 years later they decided to change it. And so that gives us the organizational standing. We have the reverter right there. If they're not going to display it, then we should get it back. And that's been pled. And these are not small items. These are substantial. And so we gave it to them to buy private speech in a public space. That's what we're alleging. My co-counsel has corrected. Are you refusing to give the cannons back? At this time. Now, I hear that there was, we checked this morning, there was supposed to be a deal made, and then we found out that there's no deal. So I've also been. I think he's informed that there's a deal. We will certainly do that. At least part of the case. Before I go too far, I want to make sure that I take something back. Since we are, I don't want to make a judicial admission that I shouldn't have made. On the very first paragraph, identification of parties, we have plaintiff Richard Brewer as an individual, a citizen of the state of Texas, resident taxpayer of the city of San Antonio. So taxpayer standing is at least something that one might consider. Also in the packet is this article. This article is just an article that talks about when the cannon were given to the monument on behalf of the camp. We talk about the camp. The camp is the Confederate veterans at the time. So the materials, they're attached to the complaint so that we can consider them in the context of a 12b1? It's all in the excerpt. It's before you. The question is, is it a proper thing that we can look to? Or are we not allowed to consider it because it's outside? It's all part of the electronic record. I understand that. And that's good. It needs to be part of the record. But I mean, in considering whether the allegations are properly leg standing,  Well, for San Antonio, we had a motion for summary judgment. Okay, so San Antonio is in a different posture. Right. And this was part of the evidence provided. That would answer that. Part of the amended complaint, right, in the record? That's what the subtitle says. These documents. It's attached to the amended complaint. Right. A couple of other notes. The fountain that we talked about earlier, that's for World War I, dead. So all of the Confederate monuments have been removed. The question, of course, is always what is. Do you know why Woodrow Wilson has been removed? I think they're legitimately planning on putting that back. Woodrow Wilson was part of the Confederate grouping. And then he was. But because he doesn't really fit normally in that genre, I think. He was the president of the United States. Don't ask me. Not our favorite president? I don't know. But he was a blight. Was he? I don't think so. It's aesthetics. It's just aesthetics, I'm told. Anyway, Senate Bill 18, which was recently passed, was amended to education code, just to clarify that, yes, all college campuses are public forum. There have been issues, as the court may be aware, with free speech and college campuses. So the Senate passed a bill that the public ones are public forums. Right. And the president passed an executive order about the free speech and public. That's all of that. But that's not. How is that pertinent? If there was a question about whether or not it was really a public forum, then that should eliminate that question. I think it's pretty clearly that sometimes we make sure the questions are answered. Thank you very much. Thank you, Your Honor. Well, we have your argument today, and we appreciate the arguments of counsel. And this case is submitted. And this concludes the oral arguments for today. And we will resume arguments tomorrow at 9 a.m. Thank you.